OPINION
{¶ 1} In this accelerated calendar case, appellant, Gerald A. Clover, appeals from the judgment of the Trumbull County Court of Common Pleas. The trial court entered summary judgment in favor of appellee, Robert Joliff.
{¶ 2} In December 1997, Clover pled guilty to one count of driving with a suspended license. He was sentenced to sixty days in jail, with fifty-eight of the days suspended. He was also placed on probation for six months. Clover served two days in jail in January 1998. He then began his probation under Probation Officer Robert Joliff.
{¶ 3} There were several conditions Clover agreed to as part of his probation. He agreed not to use any controlled substances. He also agreed to any search of his residence.
{¶ 4} On July 7, 1998, Clover failed a field drug test. Clover tested positive for marijuana. Immediately after discovering these results, Joliff notified Judge Old. Clover then appeared before Judge Old, who ordered Clover to submit to a second drug test at St. Joseph's Hospital. Judge Old wrote in a July 9th judgment entry "[t]o have urine test. If positive reimpose 58 days."
{¶ 5} The test results came back negative for controlled substances. However, the test results noted that there was a possibility that the result was a false negative, because the results showed a low specific gravity.
{¶ 6} Due to the first failed drug test and the possibility of a false negative on the second test, Joliff decided to search Clover's residence on July 14, 1998. Probation Officer Debra McElravy accompanied Joliff to Clover's residence. Joliff and McElravy then searched Clover's residence and found marijuana. In her deposition, McElravy initially stated that Clover was arrested for violating his probation by failing to show proof of his driver's license and due to the fact that marijuana was found in his residence. However, McElravy then stated that she believed Clover was arrested and held in a car before his residence was searched. After his residence was searched, Clover was taken to jail, where he spent six days.
{¶ 7} On July 20, 1998, Judge Steve Maas, who was filling in for the vacationing Judge Old, ordered Clover to serve the remaining days of his sentence in a work release program. Specifically, Judge Maas stated in a judgment entry, "upon consideration of probation, [defendant] to be released to John McCready for work release program for balance of 58 day[s] that was re-imposed by order of 7/9/98."
{¶ 8} Clover completed the work release program. In January 2000, he discovered that the results of the second drug test were negative. He then initiated this lawsuit against Joliff. He alleged that Joliff violated his constitutional rights pursuant to 42 U.S.C. § 1983. Joliff filed a motion for summary judgment, and the trial court granted it.
{¶ 9} Clover raises the following assignment of error:
 {¶ 10} "The trial court erred in granting defendant-appellee's motion for summary judgment."
{¶ 11} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] The standard of review for the granting of a motion for summary judgment is de novo.[2]
{¶ 12} In a summary judgment exercise, the burden is on the moving party to point to some evidence that shows there are no genuine issues of material fact. If the moving party does not meet this burden, then summary judgment should not be entered.[3]
{¶ 13} The substance of this lawsuit was that Joliff played an improper, arbitrary role in re-imposing Clover's original jail sentence. In the ninth paragraph of his complaint, Clover alleged that "Plaintiff [Clover] so submitted [to a second drug test], and was thereafter reported by Defendant [Joliff] to have again tested positive for the presence of illegal drugs, whereupon he was arrested and incarcerated for those fifty-eight (58) days, enhanced by an additional thirty days for claimed jail rules infractions." In his answer, Joliff responded to this allegation as follows, "[u]pon information and belief, ¶ 9 is admitted, but an enhancement of the sentence for claimed jail rules infractions was issued or performed by the Trumbull County Sheriff's Department/Jail, not the Newton Falls Municipal Court." Joliff admitted
the underlying substance of this allegation in his answer.
{¶ 14} Joliff did not submit a personal affidavit. The record is devoid of a transcript of a deposition from Joliff and does not indicate that his deposition was filed. The depositions of Probation Officers James Lane and Debra McElravy were taken and filed in the record. However, a review of the transcripts of these depositions reveals that they do not satisfy Joliff's burden in showing that there are no genuine issues of material fact.
{¶ 15} Joliff did submit two affidavits from Judge Old. In his first affidavit, Judge Old stated that he had ordered Clover to secure a drug test and informed him that if the test was positive the fifty-eight-day sentence would be re-imposed. Judge Old then stated that he became aware of the marijuana in Clover's home, and that the presence of marijuana in the residence and the positive field test on July 14, 1998, were the reasons the sentence was re-imposed.
{¶ 16} However, Joliff then submitted a second, amended, affidavit from Judge Old. In this affidavit, Judge Old states that he recalled that he was on vacation in mid-July, and that Judge Maas normally fills in for him while he is on vacation. He then states that, according to the court record, Judge Maas ordered Clover to serve forty-seven days in the work release program. He further states that the "discovery of marijuana in Clover's home on July 14, coupled with the positive field test would have been sufficient basis for re-imposition of the 58-day sentence."
{¶ 17} Judge Old states in his second affidavit that certain events "would have" been sufficient for him to re-impose the sentence. This language indicates that Judge Old did not re-impose the sentence. In Judge Maas' judgment entry, he states that the sentence was re-imposed by the July 9th order. Thus, Judge Maas did not re-impose the sentence either. The July 9th order did not re-impose the sentence, because it was conditional on the second test being positive, which it was not. The question then before this court, and formally the trial court, is "who re-imposed Clover's sentence?"
{¶ 18} The majority of the analysis of Joliff's motion for summary judgment focuses on the belief that Judge Old re-imposed Clover's sentence on July 20, 1998. This belief is directly contradicted by Judge Old's second affidavit. In Joliff's supplemental motion for summary judgment, he asserts that Judge Maas sentenced Clover to forty-seven days. This assertion is refuted by Judge Maas' judgment entry, wherein he states that Clover was to serve the remaining days of the sentence that was already re-imposed in the work release program. Joliff's motion for summary judgment does not point to any evidence that shows that Joliff did not arbitrarily re-impose Clover's sentence. Therefore, Joliff has not met his initial burden for summary judgment.
{¶ 19} Joliff's primary defense, as set forth in his motion for summary judgment and again in his appellate brief, is that probation officers have absolute immunity from civil liability. Probation officers are protected under the umbrella of absolute immunity when they act within the scope of their employment.[4] Joliff was permitted to arrest Clover pursuant to R.C. 2951.08. However, Clover was to be promptly brought before a judge or magistrate.[5] The record does not indicate that Clover was brought before a judge until six days after his arrest, and, at that time, Judge Maas was under the impression that the sentence had already been re-imposed. Joliff was not permitted to arbitrarily re-impose Clover's sentence, as this is the function of a judge or magistrate.[6] Thus, if Joliff arbitrarily re-imposed Clover's sentence, as was alleged in the complaint, he would be acting outside the scope of his employment as a probation officer.
{¶ 20} In Clark v. Eskridge, this court held that a state probation officer has absolute immunity in preparing and submitting presentence investigation reports.[7] The preparation of presentence investigation reports is within the scope of employment of a probation officer. Presentence investigation reports are a tool for a trial court to use when imposing a sentence.[8] What is alleged in this case is that Joliff overstepped the bounds of his authority and actually re-imposed Clover's sentence, without the intervention of a judge or magistrate. While we continue to recognize the importance of immunity for public officials, that immunity does not extend to a probation officer imposing a jail sentence. The question of whether immunity attached, itself, is a genuine issue of material fact that needs to be resolved.
{¶ 21} There are genuine issues of material fact remaining for trial. These issues include: how was Clover's sentence re-imposed; and what role did Joliff play in the re-imposition. As there are genuine issues of material fact remaining for trial, the trial court improperly granted Joliff's motion for summary judgment. Clover's assignment of error has merit.
{¶ 22} The judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings.
ROBERT A. NADER, J., concurs, JUDITH A. CHRISTLEY, J., concurs with Concurring Opinion.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[3] Dresher v. Burt, 75 Ohio St.3d at 293.
[4] Clark v. Eskridge (1991), 77 Ohio App.3d 524, 529.
[5] See R.C. 2951.08(A) and (B).
[6] See R.C. 2951.09 and Crim.R. 32.3(A).
[7] Clark v. Eskridge, 77 Ohio App.3d at 528.
[8] Id.